Argued May 5, reversed June 20, 1978

# CHAPMAN BROS. STATIONERY & OFFICE EQUIPMENT CO., *Appellant,*

*v.*

# MILES-HIATT INVESTMENTS, INC., *Respondent.*

(TC 77-1679, SC 25385)

580 P2d 540

Larry J. Anderson of Anderson & Richmond, Eugene, argued the cause and filed briefs for appellant.

Scott M. Galenbeck, Springfield, argued the cause for respondent. With him on the brief were Lively & Wiswall.

LINDE, J.

## LINDE, J.

Plaintiff leased office furniture to a customer which the customer used in premises rented from defendant. When the tenant abandoned the premises, defendant asserted a landlord's lien for unpaid rent against the leased furniture. After some correspondence between plaintiff and defendant, defendant sold the furniture at auction. Plaintiff thereupon filed an action alleging conversion of its property. The trial court granted summary judgment for defendant, and plaintiff appeals.

The case turns on the interpretation of the landlord's lien law enacted as part of a general recodification of the lien statutes in 1975. Oregon Laws 1975, chapter 648. The law provides that, with exceptions not relevant here,

> a landlord has a lien on all chattels . . . owned by a tenant or occupant legally responsible for rent, brought upon the leased premises, to secure the payment of rent and such advances as are made on behalf of the tenant. The landlord may retain the chattels until the amount of rent and advances is paid.

ORS 87.162. The issue is whether rented furniture brought on the premises by the tenant is "owned by a tenant" within the meaning of this section. To show that rented furniture is owned by the tenant and subject to the landlord's lien, defendant relies on the definition section of the new codification, ORS 87.142. It states that "unless the context otherwise requires:"

> (13) "Owner" includes:
>
> (a) A person who has title to a chattel or real property;
>
> (b) A person who is in possession of a chattel or real property under an agreement for the purchase thereof, whether the title thereto is in him or his vendor; or
>
> (c) A person who is in lawful possession of a chattel or real property.

Since there is no dispute that the tenant was in lawful possession of the rented furniture it brought on the

[ 645 ]

premises, defendant argues that the above definition plainly makes him an "owner" for the purpose of ORS 87.162. Plaintiff, the lessor of the furniture, falls back on the escape clause "unless the context otherwise requires." Both sides also claim support in the legislative history.

■ It should be noted at the outset that the word defined in ORS 87.142(13), the noun "Owner," does not actually appear in the landlord lien section, ORS 87.162. The function of a definition section in a statute or regulation is to give the terms there defined the precise meaning intended by the draftsman whenever one of those terms is used in the statute, rather than what might otherwise appear to be their meaning in common usage or in other contexts, and thereby to exclude doubts and disputes based on reference to such extrinsic usage. The draftsman in effect asserts that when the defined word appears in the operative sections of the statute, it has been used in full awareness of the definition given it for that statute and should be so understood by the reader. But this assertion of precise and careful use applies only to the term actually defined, not necessarily to all cognate and related forms of the same term.

The word "owner" appears in a number of sections of the consolidated lien statutes, though not in ORS 87.162.[1] That section, the landlord's lien law, only refers to "chattels . . . owned" by the tenant. Superficially, it seems only common sense that chattels are "owned" by the tenant under ORS 87.162 if he is their "owner" under the definition section, and plaintiff does not squarely deny this implication. However, plaintiff reminds us that before the 1975 consolidation of the lien statutes, the concept of a debtor "in lawful possession" of property, which is now included in the

---

[1]To illustrate the point, the legislature's new legal storage and information retrieval system, when asked to which sections the definition of "owner" in ORS 87.142(13) applies, reports the following sections but not ORS 87.162: 87.152, 87.192, 87.202, 87.212, 87.216, 87.222, 87.236, 87.242, 87.252, 87.306, 87.342, 87.346, 87.356, 87.358, 87.362, 87.366, and 87.435.

new catch-all definition of "owner," had no application to the landlord's lien, then ORS 87.535. That concept applied to protect those kinds of lienors who had rendered a service relating to property at the request of someone in lawful possession of the property. See former ORS 87.080, 87.085, 87.100, 87.500, 87.590 (1973). The new codification brought the landlord's lien under the definitions, but perhaps without consideration of the effect of the definition of "owner" on "owned" in ORS 87.162. Accordingly, we turn to the legislative history for evidence whether the 1975 law meant to extend the reach of the landlord's lien as far as these other liens.[2]

The consolidation of the lien laws was the work of an advisory committee on lien law revision to the Law Improvement Committee. See ORS 173.310, 173.340. The advisory committee prepared a proposed bill but no written report. Its proposal and recommendations were presented initially to a subcomittee of the House Judiciary Committee. The subcommittee's report contained this reference to the scope of the definition:

> The definition of "owner" in subsection (13) of section 1 includes a person who is in lawful possession of a chattel or real property. This definition may be too broad in that it would seem to allow a rental possessor or bailee to encumber a chattel or real property with liens. The subcomittee makes no recommendation.

The minutes of the full Judiciary Committee's consideration of the bill show the following:

---

[2]The parties' briefs contain the conventional invocations of the "plain meaning rule" and of the conditions for considering legislative history, including also various canons concerning strict versus liberal construction, achievement of the legislative purpose versus derogation of common law, and the like. It may save time and trouble in the long run to draw attention to the confrontation of opposing sets of canons found in the late Professor Karl Llewellyn's *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand L Rev 395 (1950), and in Llewellyn, The Common Law Tradition 521-535 (1960). *See also* Radin, *A Short Way with Statutes,* 56 Harv L Rev 388 (1942). Records showing the evolution of a statute are relevant even if a court ultimately concludes that the text of a bill itself communicated an unambiguous statement of the law to those who were called upon to vote on the bill and those who are to be guided by the law.

Rep. Frohnmayer was joined by Mr. Love [a member of the advisory committee] for additional comments on the recommendations. The subcommittee made no recommendations regarding definition for "owner", but felt it may be too broad. Mr. Love replied the lien law revision committee was trying to use one word to apply to all.

Rep. Frohnmayer continued that all of the questions of priorities were considered, and the subcommittee agreed this would probably be the most important issue in the bill. As near as they could tell the revision was something of a clarification of existing law. Mr. Love agreed it was not their intent to make any significant change.

Mr. William Stiles, representing the Oregon State Bar Committee on Debtor-Creditor Rights, interjected that Section 2 was a substantial change from existing law, dealing with landlord liens as being prior to security interests. He believed that the priority should continue as it now is. His concern is that security interests that are attached to the goods prior to the time they come on the premises should come prior to the landlord's line [sic]. Rep. Frohnmayer was not under the impression they were changing existing law and Mr. Love agreed it was not their intention to make any change in that area.

There was no objection to continuing the concept and Rep. Magruder asked Mr. Barkofsky to prepare amendments.

Rep. Frohnmayer emphasized the most important issue in this bill is whether the nonpossessory chattel lien should have priority over UCC security interest. The Advisory Committee took the position the nonpossessory lien should have priority. Others argued this changes the law and dangers the interest of creditors.

Rep. Bunn moved to reinstate the current law which gives secured party priority over the nonpossessory lien.

Rep. Kulongoski emphasized for legislative intent, in this they were not changing present law.[3]

---

[3]The minutes accurately reflect the tenor of the taped discussion. Defendant relies on this testimony which, when transcribed from the tape recording, reads:

[ 648 ]

As indications of the committee's understanding of the bill, these excerpts leave conflicting impressions. On the one hand the committee was warned that the definition of an "owner," so as to include anyone in lawful possession, appeared "too broad" because it seemed to allow liens against rented property. On the other hand, the focus of the discussion was on priority among security interests. The question was whether the landlord's lien should have priority over prior security interests in goods brought on the premises, and the apparent consensus was not to change existing law. However, with this focus on security interests,

Mr. Love:

I think the question was considered by the committee. I think our concern was, and we put a lot of emphasis on the lawful aspects of this, that if we're talking about a chattel, then someone may be able to, say, come into a store to get something repaired or go into a garage or whatever; if he's got possession of that, possession in this case is nine-tenths of the law, and if this possession was lawful, yes they would be able to encumber that even though the encumberance would have a priority over the original, let me call it the true owner. He put the person in possession, in lawful possession, to be able to do that. As between balancing the equities, that the lien should attach in that case, and that's my understanding, that we did consider that and, maybe erroneously, but we made that advised decision.

Committee:

Bill, is that any change in existing law?

Mr. Love:

I don't believe that it is. I think that existing law, I would have to go back. It seems to me that if a person has lawful possession that he can go in, we didn't, instead of saying the lawful possessor, putting that word in, we tried to take one word and call him the "owner." And I realize that some of this is not in the traditional sense that we all think of ownership, but we wanted to provide one label that could apply to these situations.

The statement indicates a deliberate choice to give a lienor a preference over a "true owner" under the sections in which the word "owner" appears and shortens the prior reference to "lawful possession," but the statement does not clarify whether this was meant to reach the landlord's lien of ORS 87.162, in which these terms do not appear.

Additional evidence that the drafters did not systematically correlate the new definition of "owner" with all the operational sections appears from the fact that the term "lawful possessor," though included in the definition, was nevertheless retained in ORS 87.152. Compare also the possible impact of this inclusion on ORS 87.202(3), 87.212, 87.242, 87.252, 87.306, and 87.346 when someone other than the title holder is in lawful possession.

nothing shows whether the committee thought that property held under a temporary lease, as distinct from a lease-purchase or conditional sale, was "owned" by the tenant under the existing landlord's lien law, former ORS 87.535. The most that can be said is that the committee was alerted to the question of liens on rented property but apparently did not pursue it beyond the general agreement to make no substantive change in the law.

When House Bill 2335 was debated on the House floor, the only statement bearing on the issue before us was that the bill "reorganizes, simplifies, and clarifies" the several lien statutes without making any major changes in prior law. The identical statement was later made in the Senate, where the discussion in committee and on the floor centered primarily on the agricultural produce lien, which also was involved in the bill.

■ Assuming that the bill left the prior law intact, defendant does not actually contend that a landlord would have had a lien against merely rented or borrowed items on the theory that they were "owned by the tenant." A reading of "owned" that potentially would extend even to such items as a borrowed hi-fi set, a friend's camera, possibly even a borrowed or rented car in a garage, would not correspond to common understanding of the term in the absence of a special definition. Thus defendant relies entirely on the definition of "owner" added to the consolidated statute by ORS 87.142(13)(c). But insistence on the strict application of this definition is not enough, since, as we have said, the definition literally controls only the specific term "owner" where that term appears. It does not appear in the landlord's lien section, and with respect to that lien under prior law, it is not a one-word substitution for "lawful possessor." See note 3 *supra.* Finally, upon the legislative history reviewed above, we cannot attribute to the entire legislative assembly any firm understanding or decision on the part of the House Judiciary Committee that the

recodification would subject to the landlord's lien personal property that would not previously have been regarded as "owned" by the tenant.[4]

It follows that summary judgment should not have been granted on the theory that defendant landlord's sale of the goods was privileged by ORS 87.162, and the case must be remanded for further proceedings.

Reversed.

---

[4]A legislative body adopting the bill is assumed to endorse the accompanying explanations and interpretations of the committee that reports the bill to the floor, unless these are modified in floor debate. The strength of the assumption depends on the extent to which the committee's understanding of the bill is made available to the other members before the vote or could be brought to their attention by interested legislators or citizens. In 1975 the rules required that each committee reporting a bill "shall include in its report . . . (d) an explanation of the bill." Or House Rep R 8.20 (1975). However, no such report seems to have been made on HB 2335. Indeed, in the absence of such a report, Mason's Manual of Legislative Procedures § 679 (1970) remarkably seems to forbid discussion on the floor of what transpired in the committee. *See* Or House Rep R 2.01 (1975). Compare the requirement in Congress that the committee reports and, if possible, a record of committee hearings must be available for at least three days before a measure is considered by the parent body. 2 USC § 190a(f) (1976); US House Rep R XI, cl 2 *(1)* (6).