Argued and submitted November 5, decision of Court of Appeals reversed; judgment of circuit court vacated, and case remanded to circuit court with instructions
December 26, 1997

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## WALTER LEE MANLEY, JR.,
*Petitioner on Review.*

(CC CM95-20903; CA A92516; SC S44187)

951 P2d 686

Dan Maloney, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender.

Mary H. Williams, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GRABER, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

### GRABER, J.

■   The question in this criminal case is whether defendant's failure to return to a county correctional facility as ordered, upon completion of an alcohol treatment program located elsewhere, constitutes the felony offense of escape in the second degree or the misdemeanor offense of unlawful departure. After a bench trial on stipulated facts, the trial court convicted defendant of escape in the second degree. On defendant's appeal, the Court of Appeals affirmed from the bench without opinion. *State v. Manley*, 147 Or App 244, 936 P2d 405 (1997). We allowed defendant's petition for review and now reverse and remand with instructions to enter a conviction for unlawful departure.

ORS 162.155(1)(c) defines the Class C felony offense of escape in the second degree:

> "A person commits the crime of escape in the second degree if:
>
> "* * * * *
>
> "(c)   The person escapes from a correctional facility[.]"

The term "escape" is statutorily defined to mean, as pertinent to the issue before us, "the unlawful departure of a person from * * * a correctional facility." ORS 162.135(5) (1995).[1]

ORS 162.175(1)(a) defines the Class A misdemeanor offense of unauthorized departure:

> "A person commits the crime of unauthorized departure if:
>
> "(a)   The person makes an unauthorized departure[.]"

As relevant here, ORS 162.135(8) defines "unauthorized departure" to mean "the failure to return to custody after any form of temporary release * * * from a correctional facility."

Defendant was housed in the Benton County Correctional Facility (BCCF). BCCF is a "correctional facility" within the meaning of ORS 162.135(2).[2] Defendant and the

---

[1] ORS 162.135 was amended during the 1997 legislative session in ways not relevant to this case. Or Laws 1997, ch 249, § 47.

[2] " 'Correctional facility' means any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order." ORS 162.135(2).

state stipulated to the facts giving rise to the present charge, as follows:

"(1)  On February 15, 1995, defendant admitted violating the terms of probation for the offense of DUII (Count II of CM 94-20588); probation was revoked and defendant was sentenced to six months incarceration with authority to parole defendant to a treatment program.

"(2)  On April 7, 1995, defendant was admitted to the Alcohol Recovery Center (ARC), a residential treatment facility in Ontario, Oregon. Prior to leaving [Corvallis to travel to Ontario], defendant was advised by his probation officer, Diana Simpson, that he was to report back to the Benton County Corrections Facility (BCCF) immediately upon his release from ARC; Simpson warned defendant that a failure to report back could constitute the crime of Escape II. Defendant acknowledged these instructions.

"(3)  The cost of ARC is paid by probation and parole; the charge includes transportation costs.

"(4)  Glenna Hlavinka, BCCF deputy, also advised defendant of his duty to report directly back to BCCF upon his discharge from treatment.

"(5)  On May 3, 1995, Jack Bright, an ARC treatment counselor, advised Diana Simpson that defendant was being discharged from the center. Upon attending ninety [Alcoholics Anonymous] meetings in ninety days, and submitting proof of such to ARC, defendant would receive his certificate of completion. Simpson requested Bright to instruct defendant to report directly back to the jail upon his return to Corvallis; Bright advised Simpson that he had already discussed this with defendant.

"(6)  On May 4, 1995, defendant boarded a Greyhound bus which was due to return to Corvallis on that same evening at approximately 8:10 p.m.

"(7)  Defendant did not report to the BCCF on May 4, 1995.

"(8)  On June 2, 1995, defendant was driving a vehicle which was stopped by [Oregon State Police] Trp. Gregory. Defendant gave a false name to Trp. Gregory and did not acknowledge his true identity until his wallet and identification card were located by the officer.

"(9)   Defendant claims that he got off the Greyhound bus in Albany at 10:00 p.m. to get something to eat, leaving his personal belongings on the bus. When he realized that the bus left without him he did not know what to do. He chose not to turn himself in.

"(10)   Prior to his release to ARC, [defendant's lawyer] advised defendant that if he successfully completed the treatment program the Court would probably remit the remainder of his sentence.

"(11)   On June 12, 1995, defendant was order[ed] to complete the sentence of incarceration previously ordered in CM94-20588; on June 14, 1995, the Court ordered that defendant be paroled on June 16, 1995, from the remainder of this sentence."

Defendant concedes that, under those facts, he committed the offense of unauthorized departure, because he "fail[ed] to return to custody after a[ ] form of temporary release * * * from a correctional facility." ORS 162.135(8); ORS 162.175(1)(a). He contends, however, that he was not guilty of escape in the second degree, because he did not "escape[ ] from a correctional facility." ORS 162.155(1)(c).

The state responds that, while in the ARC program and while traveling to and from that program, defendant remained in the constructive detention of BCCF itself. The state points out:

"Defendant was sentenced to six months incarceration; when defendant was sent to the residential treatment program, his probation officer and a BCCF deputy told him that he was to report back to BCCF immediately upon his release from the treatment program; and upon defendant's release from the program, he was again advised to report directly back to BCCF. While outside BCCF, defendant remained under the direction and control of BCCF; he was not free to decide where he would be located physically."

The state then reasons that defendant escaped, because he departed without authorization from constructive detention in a *correctional* facility.

Defendant does not quarrel with the proposition advanced by the state that an inmate can, under ORS

162.155(1)(c), "escape" from "constructive" detention in a correctional facility—for example, by absconding from a prison bus that is transporting the inmate to a different correctional facility. But defendant argues that, in fact, he was on a "form of temporary release" within the meaning of ORS 162.135(8), rather than constructively in a correctional facility.

To answer defendant's argument we must interpret ORS 162.135(8) and, more specifically, decide whether being sent to an off-premises alcohol treatment program is a "form of temporary release." We begin our analysis with the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

The legislature has not defined the term "temporary release" that appears in ORS 162.135(8) as part of the definition of "unauthorized departure." "Temporary" commonly means, as pertinent, "lasting for a time only: existing or continuing for a limited time: IMPERMANENT, TRANSITORY." *Webster's Third New Int'l Dictionary* 2353 (unabridged ed 1993). "Release" commonly means, as pertinent, "the act of liberating or freeing: discharge from restraint." *Id.* at 1917. Examined in the light of those common meanings, we safely can say that defendant's absence from BCCF was "temporary." But neither definition tells us whether the term "release" properly applies, because the very issue is whether defendant was or was not "discharge[d] from restraint" when he was sent to the off-premises alcohol treatment program.

Other statutes, contextually, help to answer that question, however. ORS 144.410 to 144.525 provide for a "work release" program. ORS 144.420(1)(d) (1995)[3] provided:

"The Department of Corrections shall establish and administer a work *release* program in which a misdemeanant or felon may participate, and *if confined, be authorized to leave assigned quarters for the purpose of*:

"* * * * *

"(d) *Participating in alcohol* or drug *treatment* programs." (Emphasis added.)

---

[3] In 1997, the legislature amended ORS 144.420 by deleting paragraph (1)(a) and renumbering paragraph (1)(d) as (1)(c). Or Laws 1997, ch 851, § 1. The amendments to ORS 144.420 are not relevant to this case.

Although BCCF is not a Department of Corrections (DOC) institution that is governed by ORS 144.420(1),[4] that statute suggests nonetheless that the legislature considers participation in an off-premises alcohol treatment program to be a form of "release" and that "release" occurs when, for a particular purpose, an inmate is "authorized to leave assigned quarters" at the place where the inmate otherwise is confined. *See also* ORS 169.115(4) (with respect to rules governing "temporary leave," sheriffs shall consult with DOC "in an effort to establish statewide uniform rules governing temporary leave for county jail prisoners").

As noted above, in general a person commits the crime of unauthorized departure if the person "fail[s] to return to custody after any form of temporary release." ORS 162.175; 162.135(8). The legislature has specified, however, that one particular form of unauthorized absence—a DOC inmate's unauthorized absence from a "work release" program—"[c]onstitutes an escape from a correctional facility under ORS 162.155." ORS 144.500(2).[5]

ORS 144.500(2) illustrates two points. First, the legislature saw a need to specify that an unauthorized absence from a "work release" program while a DOC inmate was an *escape*, a need that would not exist if that conduct *already were covered* by the usual definition of "escape." Second, although the legislature has specified that an unauthorized absence from a "work release" program is an escape *for DOC inmates*, it has not so provided for persons confined in local correctional facilities. We should give effect to the legislature's distinction between the two groups.

Additionally, this court has interpreted the escape and unauthorized departure statutes on a somewhat analogous point. In *State v. Galligan*, 312 Or 35, 816 P2d 601 (1991), the issue involved the meaning of the term "custody" in the escape statutes. This court held that a person confined in a local correctional facility who was authorized to leave the

---

[4] *See* ORS 421.005, defining "Department of Corrections institutions," and ORS 144.410(3), incorporating that definition by reference.

[5] That statute applies only to inmates under DOC's control, not to persons (such as defendant) who are confined in local correctional facilities. *See* ORS 144.410 to 144.525 (statutes refer to DOC).

facility for work, but who failed to return to the facility at the appointed time, could be charged with unlawful departure under ORS 162.175(1)(a), but not with escape in the second degree under ORS 162.155(1)(c). 312 Or at 41. In reaching that conclusion, this court stated:

> "Testimony before the Senate Judiciary Committee makes it clear that the crime of 'unauthorized departure' was directed at those inmates who fail to return after temporary leave from a correctional facility. Testifying on behalf of the Oregon Criminal Justice Council, which introduced the legislation, Bob Durston explained:

>> " '[SB 1073] relates to escapes and unauthorized departures. Section 51 amends ORS 162.135. It narrows the definition of "escape" to exclude failure to return to custody from temporary leave. There's been a great amount of concern as to an alarming escape rate in Oregon. In fact, the escape from maximum and medium security facilities is very low compared to other states. The walkaway rate, however, is very high, and the Council determined or is recommending that there be a distinction between walkaways and escapes, and that it be reflected in the criminal code. And [SB 1073] is the effort to do that. The walkaway situation would then be added to the definition of unauthorized departure.

>> " '* * * * *

>> " 'Section 52 [adding the crime of "unauthorized departure"] amends ORS 162.175 to then expand the crime of unauthorized departure to reflect the change made to the escape definition and the definition of unauthorized departure.' " *Id.* at 40 (citation omitted).

Although the *Galligan* opinion did not fully define "temporary leave" or "temporary release," it did make clear that the main purpose of the unauthorized departure statute is to punish those who fail to return after an authorized absence from the correctional facility itself.

■        At the first level of analysis, we conclude that a person who is confined in a local correctional facility and who is authorized to leave the facility itself temporarily, to attend an off-premises alcohol treatment program, is on a "form of temporary release" within the meaning of ORS 162.135(8). Accordingly, a person who fails to return, as ordered, to the

local correctional facility at the conclusion of such a treatment program commits the crime of unauthorized departure within the meaning of ORS 162.175(1)(a), but not the crime of escape. Defendant has argued from the beginning of this case, both to the trial court and to the Court of Appeals, that he should be convicted only of that less serious offense. We agree. The contrary conclusion of the Court of Appeals was erroneous.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court with instructions to enter a conviction for the crime of unauthorized departure, ORS 162.175(1)(a).