Submitted February 27, affirmed July 29, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH CHARLES ELVIG,
aka Joesph Charles Elvig,
*Defendant-Appellant.*

Marion County Circuit Court
06C54053; A136101

213 P3d 851

Peter Gartlan, Chief Defender, and Rebecca A. Duncan, Assistant Chief Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Riggs, Senior Judge.

ORTEGA, J.

### ORTEGA, J.

This case presents the question whether a person who is in custody at a correctional facility commits the crime of unauthorized departure when he is granted a temporary release but fails to return on time.[1] Defendant was convicted after a bench trial on stipulated facts and now assigns error to the trial court's denial of his challenge to the legal sufficiency of the evidence. We view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the offense. *State v. Forrester*, 203 Or App 151, 153, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006). We affirm.

The pertinent stipulated facts are these. Defendant was given a pass to leave the correctional facility where he was in custody at 8:00 a.m. on a particular day and to return at noon on the same day. However, defendant failed to return to the correctional facility until 3:30 p.m. As a result, he was charged with unauthorized departure.

We begin with the essential elements of the offense described in ORS 162.175(1)(a). That statute provides, somewhat redundantly:

"A person commits the crime of unauthorized departure if:

"(a)   The person makes an unauthorized departure * * *."

As pertinent here, "unauthorized departure" refers to "the failure to return to custody after any form of temporary release or transitional leave from a correctional facility." ORS 162.135(8). Defendant contends that the text in context and the legislative history indicate that an inmate commits the crime only when he fails to return to custody at all, not when he merely returns late. The state disagrees, arguing that the statute applies whenever an inmate fails to return to

---

[1] The parties also offered argument regarding the significance of the fact that defendant stopped en route to his appointed destination. Because we uphold defendant's conviction based on his failure to return on time, we do not address the significance of his detour.

custody in accordance with the terms of his temporary release agreement.

Application of the unauthorized departure statute, ORS 162.175(1)(a), presents a question of statutory construction that we resolve by examining the statute's text in context, considering any pertinent legislative history offered by the parties, and, if necessary, applying maxims of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin with the text of ORS 162.135(8), defining "unauthorized departure" for purposes of ORS 162.175(1)(a) as, among other things, "the failure to return to custody after any form of temporary release."

The key words in that portion of the definition are "failure," "return," "after," and "temporary." The plain meaning of the noun "failure" includes an "omission of performance of an action or task" and "the fact of a certain action or process not having occurred." *Webster's Third New Int'l Dictionary* 815 (unabridged ed 2002). The plain meaning of the verb "return" includes "to go back or come back again (as to a place * * *)." *Id.* at 1941. The plain meaning of the preposition "after" includes "later than a particular time or period of time : following the expiration of." *Id.* at 38. The plain meaning of the adjective "temporary" includes "lasting for a time only : existing or continuing for a limited time." *Id.* at 2353.

From those plain meanings, we can discern that a person "fail[s] to return to custody after any form of temporary release" within the meaning of ORS 162.135(8) when he has not come back into custody on or before the expiration of his temporary release. The word "after," in context, communicates a sense of "following the expiration of" the particular time specified in the release terms. If "after" were used in its broadest sense, to mean *any* time later, the time limitation inherent in a temporary release would become meaningless. Accordingly, if, at the time the temporary release expires, the person is not in custody, then that person has violated ORS 162.175(1)(a).

That interpretation is consistent with two Supreme Court decisions that addressed slightly different issues but nevertheless touched on circumstances similar to those presented here. In *State v. Galligan*, 312 Or 35, 816 P2d 601

(1991), an inmate failed to return to a correctional facility at the scheduled time after a temporary release. Addressing the issue of whether "custody" for purposes of unauthorized departure included detention in a correctional facility (and concluding that it did), the court nevertheless stated the question presented, which it answered affirmatively, as "whether an inmate at a correctional facility who is given authorization to leave the facility for work but fails to return to the facility at the appointed time may be charged with the crime of 'unauthorized departure.'" *Id.* at 37. Likewise, in *State v. Manley*, 326 Or 204, 211-12, 951 P2d 686 (1997), the court concluded that "a person who fails to return, as ordered, to the local correctional facility at the conclusion of * * * a treatment program commits the crime of unauthorized departure within the meaning of ORS 162.175(1)(a)," although not the crime of escape.

The legislative history offered by defendant does not support a contrary reading. Defendant cites testimony offered to the Senate Judiciary Committee on behalf of the Oregon Criminal Justice Council drawing a distinction between escapes and "walkaways" and concludes from that testimony that the statute was intended to punish persons who never return to a correctional facility after a grant of temporary release.[2] However, defendant's argument has no basis in the statute's text. Nothing in the statute suggests that it applies only if the defendant never returns. Even if the

---

[2] Defendant cites the following testimony:

"[SB 1073] relates to escapes and unauthorized departures. Section 51 amends ORS 162.135. It narrows the definition of 'escape' to exclude failure to return to custody from temporary leave. There's been a great amount of concern as to an alarming escape rate in Oregon. In fact, the escape from maximum and medium security facilities is very low compared to other states. The walkaway rate, however, is very high, and the Council determined or is recommending that there be a distinction between walkaways and escapes, and that it be reflected in the criminal code. And [SB 1073] is the effort to do that. The walkaway situation would then be added to the definition of unauthorized departure.

"* * * * *

"Section 52 [adding the crime of 'unauthorized departure'] amends ORS 162.175 to then expand the crime of unauthorized departure to reflect the change made to the escape definition and the definition of unauthorized departure."

*Galligan*, 312 Or at 40 (quoting Tape Recording, Senate Judiciary Committee, SB 1073, Apr 3, 1989, Tape 91, Side B (statement of Bob Durston)) (brackets and omission in *Galligan*).

legislative history offered by defendant addresses a primary concern with a complete failure to return to custody, that history does not suggest that the legislature intended to exclude from the statute's reach an inmate's belated return to custody. The cited history does not overcome the plain meaning of the text and context of ORS 162.175(1). *See Gaines*, 346 Or at 172 (noting that "a party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it"); *State v. Kelly*, 229 Or App 461, 211 P3d 932 (2009).

Affirmed.