Argued and submitted November 10, reversed December 22, 1980

STATE OF OREGON,
*Respondent,*
*v.*
BYRLE LAIRD DILLENBURG,
*Appellant.*
(No. 117,495, CA 18038)
621 P2d 1193

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, argued the cause for respondent. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals from a judgment of conviction for Escape in the Second Degree, ORS 162.155. At the time of his escape the defendant was confined in the Forest Work Camp located in Tillamook County. Previously, the defendant had been an inmate at the Oregon State Penitentiary. He was transferred to the Forest Camp under the authority of the Penitentiary's superintendent, ORS 421.465, and was returned to the Penitentiary after his escape. The indictment for escape was brought in Marion County, where the Penitentiary is located. Prior to trial the defendant moved for a change of venue[1] on the theory that the escape took place in Tillamook County. The trial court denied the motion, and trial then proceeded to the court upon stipulated facts. At the close of the state's case, the defendant renewed his claim of improper venue by moving for a judgment of acquittal. This motion was likewise denied and, after finding the defendant guilty, the trial court sentenced him to a term of three years to be served consecutively to the term he was then serving. We conclude that the judgment of conviction must be reversed because venue did not properly lie in Marion County.[2]

Forest work camps are established by the Assistant Director of Corrections for the employment of state and local inmates. State inmates are inmates of the Penitentiary or Correctional Institution. They may be transferred by the superintendent of the institution in question to a forest work camp after having been found eligible under rules promulgated by the Assistant Director. While a state inmate is at a forest work camp, the superintendent of the institution in which he was confined is responsible for his custody and care. *See generally* ORS 421.450 to 421.490. The fact stipulation introduced at trial established that the Tillamook Forest Work Camp is a correctional facility and

---

[1] Because, under defendant's theory, the grand jury of Marion County did not have the authority to indict him, *see* ORS 132.010, the motion for change of venue would not appear to be appropriate. A change of venue presupposes that venue properly resides in the court in which the motion for a change is made. *See* ORS 131.305 to 131.363.

[2] Defendant also assigns as error the imposition of consecutive sentences. Because we reverse his judgment of conviction, we need not discuss this issue.

a satellite or part of the Oregon State Penitentiary and the Oregon State Correctional Institute.

The Oregon Constitution provides that, in criminal prosecutions, an accused

" * * * shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed." Or Const, Art I, § 11.

ORS 131.305(1) provides that, unless otherwise specified, venue in criminal actions lies in the county

"(1) * * * in which the conduct that constitutes the offense or a result that is an element of the offense occurred."

Where the conduct or results of an offense occur in two or more counties, the trial may be held in any of those counties. ORS 131.315(1).

The defendant was charged by indictment with escape from a correctional facility, specifically the Oregon State Penitentiary. ORS 162.155(1)(c). A correctional facility is defined as "any place used for the confinement of persons charged with or convicted of a crime * * *." ORS 162.135(2). The state stipulated in this case that the Tillamook Work Camp was a "correctional facility." *See* ORS 421.005(6). At the time of his escape, the defendant was confined at the camp and not the Penitentiary. It was the camp's confinement from which he escaped. Both the conduct and the results of the defendant's offense occurred in Tillamook County. Thus, venue lay in that county alone.

The state argues that, while the defendant was actually confined in the forest camp, he was constructively confined in the Penitentiary and, therefore, venue was proper in either county. It relies on *Kneefe v. Sullivan,* 2 Or App 152, 465 P2d 741 (1970). In *Kneefe,* an inmate of the Oregon State Correctional Institution escaped while on work release in Multnomah County. The case was brought in Multnomah County. Kneefe argued that venue was only proper in Marion County, because his custody remained with the institution there. We held that the trial could be properly held in either county. In so doing, we reiterated the concept of constructive custody as set forth in *State v. Hutcheson,* 251 Or 589, 447 P2d 92 (1968). In that case, it was held that a work release enrollee who escaped from his

job in Clackamas County was nonetheless in the constructive custody of the Corrections Division in Marion County and his trial was properly conducted in Marion County.

At the time of *Kneefe,* escape was "escape from official detention," which was defined, in part, as "detention in a facility for the custody of persons under charge or conviction of crime." Former ORS 162.322(1)(b); ORS 162.324. Since *Kneefe* was decided, however, escape statutes have been revised. Custody, as now defined, specifically excludes detention in a correctional facility. ORS 162.135(3).[3] The crime of escape can be escape from custody *or* a correctional facility. *See* ORS 162.135; ORS 162.155.[4] It is clear that the two terms now have distinct meanings. In the present case, defendant is charged with having escaped from a *correctional facility,* not from custody.

---

[3] ORS 162.135(3) provides:

"(3) 'Custody' means the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but does not include detention in a correctional facility, juvenile training school or a state hospital."

[4] ORS 162.135 provides, in pertinent part:

"* * * * *

"(2) 'Correctional facility' means any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order. 'Correctional facility' does not include a juvenile training school, and applies to a state hospital only as to persons detained therein charged with or convicted of a crime, or detained therein after acquittal of a crime by reason of mental disease or defect under ORS 161.295 to 161.380.

"(3) 'Custody' means the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but does not include detention in a correctional facility, juvenile training school or a state hospital.

"(4) 'Escape' means the unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited period, *of a person from custody or a correctional facility* but does not include failure to comply with provisions of a conditional release in ORS 135.245.

"* * * * *." (Emphasis supplied).

ORS 162.155 provides:

"(1) A person commits the crime of escape in the second degree if:

"(a) He uses or threatens to use physical force escaping from custody; or

"(b) Having been convicted or found guilty of a felony, he escapes from custody imposed as a result thereof; or

"(c) He escapes from a correctional facility."

We think the distinction also has legal consequences. It may be appropriate, where a person is lawfully outside of one correctional facility, to say he is still confined there. But where the person is lawfully outside one institution solely so that he may be lawfully confined in a *second* correctional institution, it serves no purpose to say he is also still confined in the first.

The state calls our attention to the 1971 Criminal Law Commission's commentary on the revision of the escape statutes. The Commission's notes stated:

"'Escape' is defined in subsection (4) [of ORS 162.135(4)] as the unlawful departure of a person from custody or a correctional facility. The definition of 'custody' refers expressly to both actual and constructive restraint. It is intended that the same rule apply to restraint imposed by a 'correctional facility,' *i.e.,* an inmate is considered confined within a 'correctional facility' from time of original commitment until lawfully discharged, regardless of his actual presence within the institution. It has been argued that since some situations involve no actual restraint, *e.g.,* work release programs, temporary leave, the actor's unauthorized departure from the limits of his liberty did not constitute an escape. This draft rejects that view." Criminal Law Revision Commission, Proposed Criminal Code, Final Draft, 94.

We do not read the Commission's notes as contrary to the view we take here. The principal concern of the annotation was the status of an inmate while lawfully outside *any* correctional facility. Here, defendant *was* lawfully confined to a correctional facility—the work camp.

The defendant was charged with escape from a correctional facility. The forest work camp is a correctional facility and it is this institution from which he escaped. Venue was proper in Tillamook county alone. Defendant's conviction for escape from the Oregon State Penitentiary must be reversed.[5]

Reversed.

---

[5] We note that our decision in no way affects the applicability of the *Kneefe* rationale to the case where an inmate escapes from a work release program. Enrollees in such programs are considered inmates of the penitentiary or correctional institution. Such inmates have not been transferred to another correctional facility, as in the case before us.