Argued and submitted August 28, 1987, affirmed February 10, 1988

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL ANTHONY RATLIFF,
*Appellant.*

(C86-09-34311; CA A42709)

749 P2d 616

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant appeals from his conviction for escape in the second degree. ORS 162.155. We affirm.

Defendant was originally convicted of burglary in the first degree and sentenced to the custody of the Oregon State Corrections Division; he was confined in the Multnomah County Correctional Facility (MCCF). While there, he was placed on a work release program to attend Northwest Business College. To ease his transportation to school, MCCF decided to transfer him to the Clackamas County Work Release Center (CCWR), a minimum security facility. The transfer was made pursuant to an agreement between Multnomah and Clackamas counties. The agreement provided, in part, that Clackamas County would provide work release services to Multnomah County. The agreement also provided that "Clackamas shall release Multnomah offenders referred pursuant to this agreement only upon receipt of notification by an authorized employee of the Multnomah County Sheriff's Office Corrections Division."

Defendant entered into a work release agreement with Multnomah County, which stated, in part:

> "Failure to report at the scheduled time, or failure to return to my place of lodging at the scheduled time, may be considered an ESCAPE."

Defendant also signed an "Alternative Housing Agreement," which stated, in part:

> "I understand that I must report to and reside at CCWR * * * and must abide by the conditions of that agency and work release. * * *
>
> "* * * * *
>
> "I, the undersigned, [understand] that as an inmate of Multnomah County, I will be subject to official detention by the Sheriff of Multnomah County * * *."

The agreement, signed on August 13, 1986, provided for a "projected release date" of December 24, 1986.

Defendant was instructed to report to CCWR by 7 p.m. on August 14, 1986; he arrived early, at about 3:10 pm. When he arrived, the regular staff was in a meeting, and a secretary was substituting in the front office. Defendant did

not go through CCWR's intake procedures. He either asked permission or stated that he wanted to go home and get other clothing, left and never returned.

■ Defendant raises two issues on appeal. First, he contends that failure to return to a county correctional facility does not constitute an escape under ORS 162.155.[1]

ORS 162.135(4) provides:

" 'Escape' means the unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited period, of a person from custody or a correctional facility * * *."

ORS 162.135(2) provides:

" 'Correctional facility' means any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order."

Courts have consistently held that when incarcerated persons are lawfully outside their correctional facilities, they are still confined there for purposes of the escape statute.[2] *See State v. Gilmore,* 236 Or 349, 354-5, 388 P2d 451 (1964); *State v. Dillenburg,* 49 Or App 911, 916 n 5, 621 P2d 1193 (1980); *Kneefe v. Sullivan,* 2 Or App 152, 465 P2d 741, *rev den* (1970). Although the escape statute has been amended since *Gilmore* and *Kneefe,* the current statute was intended to preserve that principle:

" 'Escape' is defined in subsection (4) [of ORS 162.135] as the unlawful departure of a person from custody or a correctional facility. The definition of 'custody' refers expressly to both actual and constructive restraint. It is intended that the same rule apply to restraint imposed by a 'correctional facility,' *i.e.,* an inmate is considered confined within a 'correctional facility' from time of original commitment until lawfully discharged, regardless of his actual presence within the institution. It has been argued that since some situations

---

[1] The state contends that this argument was not raised below and should not be addressed for the first time on appeal. However, defendant's venue argument placed at issue what the elements of escape are in this context.

[2] The state originally cited ORS 144.500(2) as support for the proposition that escape from a work release program is an escape under ORS 162.155. It later withdrew that argument, stating that it believed ORS 144.500(2) was not applicable to work release programs for inmates of county correctional facilities. Accordingly, we do not rely on that statute in this opinion.

involve no actual restraint, *e.g.*, work release programs, temporary leave, the actor's unauthorized departure from the limits of his liberty did not constitute an escape. This draft rejects that view." Criminal Law Review Commission, *Proposed Criminal Code,* Final Draft, 94.

We hold that an individual on a work release program from a county correctional facility is incarcerated in that facility for the purposes of ORS 162.155 and that absence contrary to the terms of such a work release program constitutes an unlawful departure from a correctional facility under ORS 162.135(4).

■   Defendant also contends that venue in Multnomah County was improper and that he should have been tried in Clackamas County where CCWR is located. He argues that the only facility he escaped from was CCWR. The state argues that defendant never completed his trip to CCWR and, in any event, he was merely to be housed in CCWR while on a MCCF work release program. Therefore, venue was proper in Multnomah County.

Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to public trial * * * in the county in which the offense shall have been committed * * *."

ORS 131.305(1) provides:

"Except as otherwise provided in ORS 131.305 to 131.415, criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred."

When the conduct or results of an offense occur in more than one county, the trial may be held in any of those counties. ORS 131.315(1).

We need not address the effect on venue of defendant's continuing relationship with MCCF while housed at CCWR, because defendant was never housed at CCWR. Defendant failed to complete his trip; he was never processed by CCWR, and, under the terms of his release from MCCF, he was not required to be at CCWR until 7:00 pm. At the time of his escape, he was constructively confined at MCCF in Multnomah County. He did not comply with MCCF work release rules. Breaking those rules constituted an unlawful

departure from MCCF, and was an escape from there. Therefore, venue in Multnomah County was proper. *State v. Dillenburg, supra,* 49 Or App at 916 n 5; *Kneefe v. Sullivan, supra,* 2 Or App at 156.

Affirmed.