Argued and submitted June 21, affirmed September 6, 1989

STATE OF OREGON,
*Respondent,*

*v.*

LEON ALTON TORGERSON,
*Appellant.*

(C880539CR; CA A48992)

778 P2d 991

Carol E. Jones, Hillsboro, filed the brief for appellant.

Vera Langer, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant appeals his conviction for escape in the second degree. ORS 162.155.[1] We affirm.

Defendant was sentenced to serve 18 months in the Washington County Jail (WCJ) for two convictions of driving while under the influence of intoxicants. After serving almost a week in WCJ, he was transferred to the Washington County Community Corrections Restitution Center (Center). Center is located across the street from WCJ and is part of WCJ; both are correctional facilities in Washington County.

On entering Center, defendant signed an agreement with Washington County which provided that, although he was a resident at Center, his status as an inmate of WCJ had not changed. It stated further that defendant agreed

> "to travel directly by the approved method of transportation to [his] authorized destination and return promptly to the Restitution Center without unauthorized stop or detours. Failure to report at the scheduled time, or failure to be in an authorized area at a prescribed time may be considered an ESCAPE * * *."

While at Center, defendant was placed on a "Special Custodial/Home Supervision Release" program to alleviate overcrowding of inmates. The custodial release agreement signed by defendant on March 29, 1988, required him to "remain at [his] place of residence at all times" with listed exceptions. The agreement also instructed defendant to report in person to the Center at 7:45 p.m. on April 5. Defendant said that he understood the agreement and signed it under these provisions:

---

[1] ORS 162.155 provides, in pertinent part:

"(1) A person commits the crime of escape in the second degree if:

"* * * * *

"(c) The person escapes from a correctional facility * * *."

ORS 162.135(4) defines "escape" as

"the unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited period, of a person from custody or a correctional facility * * *."

ORS 162.135(2) defines "correctional facility" as

"any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order."

"I understand that I'm not released from custody and I'm still serving my jail sentence on a supervised release. I agree to return to the Restitution Center immediately upon request by staff regardless of the reason, and failure to do so will result in *escape* proceedings.* * *

"I understand that I'm on a privileged pass and must adhere to all Restitution Center Custodial agreements."

Defendant failed to call or to appear at Center on April 5. Eventually, he was apprehended and was charged with escape.

■ Defendant argues that, because at the time of his alleged escape he was released to reside at home, he was neither confined in a correctional facility nor "constructively confined" in a correctional facility, unlike the defendant in *State v. Ratliff,* 89 Or App 483, 749 P2d 616 (1988).[2] According to defendant, under *Ratliff,* a violation of a supervised release agreement can constitute an escape only where the defendant is on a work release program and not a Home Supervision Release Program (HSRP). We fail to see a significant difference between defendant's circumstances and those of a person on a work release program.

■ Defendant indicated that he understood the conditions of the HSRP agreement and agreed to comply with them. When he violated the conditions of that agreement by failing to report to his supervisor at Center as scheduled, he was still constructively confined in Center and WCJ. Because his absence from WCJ and Center was contrary to the terms of the HSRP agreement, it constituted an unlawful departure from a correctional facility and was therefore an escape.

■ Defendant also contends that venue in Washington County was improper and that he should have been tried in Multnomah County, because he was residing in his apartment in that county at the time of his alleged escape. That argument, however, ignores the fact that he was charged with escape from WCJ in Washington County. Because he was

---

[2] In *Ratliff,* we held that

"an individual on a work release program from a county correctional facility is incarcerated in that facility for the purposes of ORS 162.155 and that absence contrary to the terms of such a work release program constitutes an unlawful departure from a correctional facility under ORS 162.135(4)." *State v. Ratliff, supra,* 89 Or App at 487; *see also State v. Scott,* 94 Or App 250, 764 P2d 976 (1988).

constructively confined there for purposes of the escape statute, and because he committed the crime by his failure to report to Center—a part of WCJ, venue in Washington County was proper. *State v. Ratliff, supra,* 89 Or App at 487-88; *see also State v. Dillenburg,* 49 Or App 911, 914-16, 621 P2d 1193 (1980).[3]

Affirmed.

---

[3] We do not address defendant's arguments regarding jury instructions, because we conclude that they are without merit.