Argued and submitted June 29, affirmed November 7, 1990, reconsideration denied January 16, petition for review denied February 5, 1991 (311 Or 151)

## STATE OF OREGON,
*Respondent,*

*v.*

## CYNTHIA MARCELLE SASSER,
*Appellant.*

## (C89-0186CR; CA A61974)

799 P2d 1146

Laura Graser, Portland, argued the cause and filed the brief for appellant.

Wendy J. Paris, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Keith W. Wingfield, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals her conviction for escape in the second degree. ORS 162.155.[1] We affirm.

■      Defendant was sentenced to serve 60 days in jail on a misdemeanor conviction. Due to jail overcrowding, she was released early on the condition that she reside in her sister's home, return to that residence by 8 p.m. daily and telephone the jail three times each week. She stipulated that she did not return to her designated residence on the evening of January 23, that she neglected to make three of the required telephone calls to the jail and that she did not comply with a deputy sheriff's demands that she telephone him and return to the jail. Nonetheless, she challenges her conviction on the ground that her noncompliance did not constitute "escape from a correctional facility," because her sister's home was not a correctional facility and her absence from jail on early release did not constitute an escape.

A "correctional facility" is defined as

> "*any* place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order." ORS 162.135(2). (Emphasis supplied.)

Inmates housed outside a correctional facility are in constructive custody. In *State v. Ratliff,* 89 Or App 483, 486, 749 P2d 616 (1988), we held that an inmate who was placed in a work release program nonetheless remained in the custody of the correctional institution. Then in *State v. Torgerson,* 98 Or App 248, 251, 778 P2d 991 (1989), we held that an inmate on "Home Supervision Release" was still in custody. Further,

> " '[t]he definition of "custody" refers expressly to both actual and constructive restraint. It is intended that the same rule apply to restraint imposed by a "correctional facility," *i.e.,* an inmate is considered confined within a "correctional facility" from time of original commitment until lawfully discharged, regardless of [her] actual presence within the institution.' " *State v. Dillenburg,* 49 Or App 911, 916, 621 P2d 1193 (1980),

---

[1] ORS 162.155 provides, in part:

"(1) A person commits the crime of escape in the second degree if:

"* * * * *

"(c) The person escapes from a correctional facility[.]"

> *quoting* 1971 Criminal Law Revision Commission, *Proposed Criminal Code, Final Draft* 94.

Until the end of her 60-day sentence, defendant remained in the custody of the sheriff and was constructively confined within the correctional facility, regardless of her housing arrangement.

Defendant contends that her actions did not constitute "escape," because her departure from jail was in accordance with a furlough program and was, therefore, not unlawful. That argument overlooks the fact that she was charged with escape for violating the conditions of her release agreement, not for leaving the confines of the jail. At the time of her arrest and indictment, "escape" was defined as

> "the *unlawful departure,* including failure to return ⁓ ; custody after temporary leave granted for a specific purpose or limited period, *of a person from custody or a correctional facility * * *.*" ORS 162.135(4) (*since amended by* Or Laws 1989, ch 790, § 53). (Emphasis supplied.)

Defendant's failure to return to the designated residence supports a finding of unlawful departure, because she was in the constructive custody of a correctional facility and her absence from the residence was contrary to the terms of her release agreement.[2] *State v. Torgerson, supra,* 98 Or App at 251.

■ Defendant also argues that, because a "furlough" is intended to be more permanent than other types of leave, this case should be distinguished from *Ratliff* and *Torgerson.* We disagree. The escape statute creates no exception for inmates who are furloughed, and they are not distinguished from inmates who are granted other types of early release. *See, e.g.,* ORS 137.520(3).[3]

■ Finally, defendant argues that the release agreement

---

[2] Defendant argues that the indictment charges her with escape "on and between January 19 and January 23, 1989" and that her actions on January 24 (failure to return to jail on demand) may therefore not be considered in deciding whether the elements of escape were established. Because our determination does not rely upon the events of January 24, we need not reach that issue.

[3] ORS 137.502(3) provides, in part:

"The sheriff of a county in which a defendant is confined * * * may allow the release of the defendant upon pass, furlough, leave, work or educational release unless otherwise ordered by the committing magistrate."

was so ambiguous that it could not properly form the basis of a prosecution for second degree escape.[4] Specifically, she notes that it fails to indicate that noncompliance with its terms would constitute escape, and it uses "and/or" language to describe the consequences of noncompliance. The agreement, entitled "Conditions of Inmate Furlough Program * * *," provides, in part:

"The sentenced inmate shall:

"(1)   Remain under the supervision and control of the Washington County Sheriff's Department.

"(2)   Abide by the directives of the Inmate Furlough Program and its representatives.

"* * * * *

"(5)   Maintain 3 phone contacts per week with program staff [according to specific directions].

"* * * * *

"(9)   Agree to be in your approved residence by 8:00 p.m. each day or at a designated time set by the program staff.

"* * * * *

"(11) Agree to return to custody if and when you are directed to do so by program staff.

"* * * * *

"I have read or have had read to me and fully understand and accept the conditions of participation in the Inmate Furlough Program. *I understand that if I accept participation in this program and fail to abide by the conditions, I may be returned to custody, prosecuted, and/or subjected to disciplinary action.*" (Emphasis supplied.)

The terms of the agreement are clear and specific. Although it does not inform the inmate of the particular charges that she may face, it adequately conveys the possibility of prosecution. The "and/or" language does not, as defendant claims, render the agreement unconstitutionally vague or allow "unbridled discretion." The document contains the rules that govern defendant's release and indicates the consequences that may follow her failure to comply with the

---

[4] Although we discuss defendant's argument according to its terms, we do not imply agreement with her premise that *the agreement* must give her adequate notice of the possibility of prosecution in order for her to be prosecuted for violating the escape statute.

rules. The mere presence of discretion does not render discriminatory the decision to charge defendant with escape. *See, e.g., State v. Freeland,* 295 Or 367, 371, 667 P2d 509 (1983); *State v. Clark,* 291 Or 231, 246, 630 P2d 810, *cert den* 454 US 1084 (1981).

Affirmed.