# STATE OF OREGON,
## *Respondent,*

*v.*

# ROBERT ALLEN CROGHAN,
## *Appellant.*

## (CF01345; CA A101168)

986 P2d 579

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Jas. J. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals his conviction of escape in the second degree. ORS 162.155. Defendant contends that he did not escape from the correctional facility in which he was confined when he absconded from the law library across the street from that facility. He therefore asserts that he should have been convicted of a lesser offense: escape in the third degree or, alternatively, unauthorized departure. We review for errors of law, ORS 138.220, and affirm.

Defendant was an inmate at the Union County Correctional Facility awaiting trial. At defendant's request, a deputy sheriff escorted him to the law library across the street from the facility to perform legal research. Defendant departed from the library without permission while under guard, although he did not use or threaten physical force. Defendant remained at large until he was subsequently apprehended and charged with escape in the second degree, which the state alleged he committed by escaping from a "correctional facility." ORS 162.155(1)(c). After a stipulated facts trial, defendant was convicted of that charge. The trial court concluded that

> "the analysis proceeds under subsection (1)(c) of ORS 162.155. * * * I do in—interpret the appellate decisions to essentially extend and expand the meaning of correctional facility to include the location as happened here, the Union County Law Library, which is across the street from the Union County Correctional Facility."

The court sentenced defendant to 18 months' imprisonment and 24 months' post-prison supervision.

In his sole assignment of error, defendant argues that the trial court convicted him of the wrong offense, because he did not escape from a "correctional facility" as required by ORS 162.155(1)(c). Defendant contends that he departed either from custody, conditional release, or temporary release. The state responds that defendant was constructively confined in a correctional facility when he absconded and, therefore, was properly convicted of escape in the second degree.

ORS 162.155, which defines the crime of escape in the second degree, provides, in part:

"(1)   A person commits the crime of escape in the second degree if:

"* * * * *

"(c)   The person escapes from a correctional facility[.]

"* * * * *

"(2)   Escape in the second degree is a Class C felony."

ORS 162.135(5) defines "escape," for the purposes of this case, as "the unlawful departure of a person from custody or a correctional facility. * * * 'Escape' does not include failure to comply with provisions of a conditional release in ORS 135.245." ORS 162.135(2) defines a correctional facility as "any place used for the confinement of persons charged with or convicted of a crime * * *." Defendant concedes that the Union County Correctional Facility is a "correctional facility" but contends that the law library is not such a facility.

We have held that detention at an alternative site may constitute constructive confinement supporting a conviction of escape in the second degree. *State v. Schaffer*, 124 Or App 271, 274, 862 P2d 107 (1993), *rev den* 318 Or 479 (1994). In *Schaffer*, the defendant was sentenced to report to the courthouse during business hours and to remain under house arrest during evenings and weekends. He was convicted of escape in the second degree when he failed to appear at the courthouse. *Id.* at 273. We affirmed that conviction, concluding that "[b]y declaring that the court[house] was a correctional facility and confining defendant to that facility * * *, the judge ensured that defendant was at all times either in custody or confined to a correctional facility. In sum, he had not been 'released.' " *Id.* at 274 (footnotes omitted). *See also State v. Esmond*, 125 Or App 613, 615-16, 866 P2d 494 (1994) (defendant, who absconded from home detention probation program, committed escape in the second degree under ORS 162.155(1)(c), because he was constructively confined in county correctional facility).

■       Here, although there was no judicial declaration that the law library was a "correctional facility," defendant

continued to be restrained at all times from unsupervised departure. Furthermore, defendant had not been lawfully discharged from confinement at the time he was escorted to the library. *See State v. Dillenburg*, 49 Or App 911, 916, 621 P2d 1193 (1980) ("[A]n inmate is considered confined within a 'correctional facility' from time of original commitment until lawfully discharged, regardless of his actual presence within the institution."); *State v. Sasser*, 104 Or App 251, 253, 799 P2d 1146 (1990), *rev den* 311 Or 151 (1991) (correctional facility is any place used for confinement, and therefore inmates housed outside correctional facility are in constructive custody). Regardless of the fact that defendant was physically outside the jail walls, he was still subject to the facility's restraint on his freedom. That restraint amounted to constructive confinement within the facility.

Defendant next asserts that he was in the "custody" of his sheriff escort when he departed from the library. Escape from custody may constitute escape in the second degree only if the defendant uses or threatens the use of physical force. ORS 162.155(1)(a). If defendant escaped from "custody," he could be convicted only of escape in the third degree, because he did not use or threaten physical force to effect escape. ORS 162.145(1) ("A person commits the crime of escape in the third degree if the person escapes from custody.").

Defendant was not in "custody" when he left the law library. Custody requires "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, *but does not include detention in a correctional facility* * * *." ORS 162.135(4) (emphasis added).[1] Because defendant was constructively confined in the correctional facility when he departed from the law library, he was not in custody for purposes of ORS 162.155.

■ Defendant next argues that he was "conditionally released" while in the law library and, therefore, his departure was not an escape. Failure to comply with the provisions

---

[1] The definitions set forth in ORS 162.135, including the definition of custody, are expressly made applicable to the crimes of escape in each of its degrees (ORS 162.145 to ORS 162.165) and to the offense of unauthorized departure (ORS 162.175).

of a conditional release does not constitute escape. ORS 162.135(5); *State v. Wilde*, 123 Or App 493, 496, 862 P2d 105 (1993).

Conditional release is "a nonsecurity release which imposes regulations on [defendant's] activities and associations * * *." ORS 135.230(2). A release requires defendant's "temporary or partial freedom * * *." ORS 135.230(8). Here, defendant had no such freedom. He was escorted under guard to do legal research and was subject to uninterrupted supervision. He was to be returned to the Union County Correctional Facility after finishing his research. Furthermore, in order for defendant to be subject to pretrial "release," a formal agreement establishing the conditions of release would have been required. ORS 135.255(1).[2] There is no evidence that any release agreement was executed. Therefore, defendant was not conditionally released and his departure was not excluded from the definition of escape.

■ Defendant finally contends that he was on temporary release at the time of his escape and was, at most, guilty of unauthorized departure, a misdemeanor. ORS 162.175.[3] *See State v. Manley*, 326 Or 204, 211-12, 951 P2d 686 (1997) (failure to return to correctional facility after authorized attendance at off-premises treatment program is unauthorized departure, not escape). The state responds that defendant was not on temporary release and that *Manley* is distinguishable. We agree with the state.

_____

[2] ORS 135.255(1) provides, in part:

"The defendant shall not be released from custody unless the defendant files with the clerk of the court in which the magistrate is presiding a release agreement duly executed by the defendant containing the conditions ordered by the releasing magistrate or deposits security in the amount specified by the magistrate * * *."

A release agreement is a "sworn writing by the defendant stating the terms of the release and, if applicable, the amount of security." ORS 135.230(9).

[3] ORS 162.175 provides, in part, that:

"(1) A person commits the crime of unauthorized departure if:

"(a) The person makes an unauthorized departure; * * *

"* * * * *

"(2) Unauthorized departure is a Class A misdemeanor."

In *Manley*, the court held that a convicted inmate's failure to return to a correctional facility after alcohol treatment constituted unauthorized departure and not escape in the second degree. There, the defendant had been sent, without supervision, to a treatment facility hundreds of miles from the correctional facility. The defendant was instructed to return to the correctional facility upon completion of the treatment program. After missing his bus, the defendant did not return to the correctional facility. The Supreme Court held that the defendant was on temporary release and, therefore, was not subject to constructive confinement while outside the correctional facility. The court concluded that the defendant could not be convicted of escape in the second degree but, instead, was guilty of unauthorized departure. Unlike in *Manley*, defendant in this case was a pretrial detainee without a release agreement and remained subject to ongoing restraint while outside of the facility. Defendant was not temporarily released when he absconded.

We conclude that, although he was outside the correctional facility when he escaped, defendant was constructively confined and was not released. Therefore, he was properly convicted of escape in the second degree.

Affirmed.