Submitted on record and briefs January 5, OAR 291-100-0080(3)(g) held valid April 11, 2007

DANIEL GENE CURTISS,
*Petitioner,*

*v.*

DEPARTMENT OF CORRECTIONS,
Birdie Worley,
Rules Coordinator,
*Respondent.*

A130405

157 P3d 279

Daniel Gene Curtiss filed the brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

■    Petitioner, an inmate in a Department of Corrections (DOC) facility, challenges the validity of a DOC rule, OAR 291-100-0080, which pertains to DOC's calculation of credit for time served. Petitioner asserts that the rule exceeds the authority of the DOC because it contradicts one of the provisions of ORS 137.370(2). On judicial review of the validity of a rule pursuant to ORS 183.400, we determine whether "the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute." *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984). As explained below, we uphold the validity of OAR 291-100-0080.

ORS 137.370 provides, in pertinent part:

"(1)   When a person is sentenced to imprisonment in the custody of the Department of Corrections, the term of confinement therein commences from the day the person is delivered to the custody of an officer of the Department of Corrections for the purpose of serving the sentence executed, regardless of whether the sentence is to be served in a state or federal institution.

"(2)   Except as provided in subsections (3) and (4) of this section, *when a person is sentenced to imprisonment in the custody of the Department of Corrections, for the purpose of computing the amount of sentence served the term of confinement includes only:*

"(a)   *The time that the person is confined by any authority after the arrest for the crime for which sentence is imposed*; and

"(b)   The time that the person is authorized by the Department of Corrections to spend outside a confinement facility, in a program conducted by or for the Department of Corrections.

"(3)   When a judgment of conviction is vacated and a new sentence is thereafter imposed upon the defendant for the same crime, the period of detention and imprisonment theretofore served shall be deducted from the maximum term, and from the minimum, if any, of the new sentence.

"(4) A person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail towards service of the term of confinement."

(Emphasis added.)

OAR 291-100-0080 provides, in pertinent part:

"(1) [The DOC Offender and Sentence Calculation Unit] must receive time served certifications directly from the county sheriff or other qualified certifying authority. Time served certifications will not be accepted from an inmate. Time served must be certified by the custodial authority.

"* * * * *

"(3) Pursuant to ORS 137.320(3) and 137.730:

"(a) An inmate will receive time served credit only for the actual number of days confined after arrest in a county jail or other non-Department of Corrections facility (as authorized by statute) as a result of the charge or of the conduct which gave rise to the charge for which the sentence is later imposed. Credit will be given only for the presentence time the inmate was confined in the county jail or other non-Department of Corrections facility (as authorized by statute). The days must be certified by the county sheriff or other qualified certifying authority, or if the time served certification is erroneous (for example, days certified when the inmate was not actually confined in that county's jail), as can be verified.

"* * * * *

"(g) *An inmate will not receive time served credit for time not confined in the county jail, such as time spent on house arrest* * * *."

(Emphasis added.)

Petitioner argues that OAR 291-100-0080(3)(g) exceeds DOC's authority because the rule does not authorize credit for time served for time spent on conditional release or

home detention after arrest, which, petitioner contends, constitutes "time that the person is confined by any authority after the arrest for which the sentence is imposed," for purposes of ORS 137.370(2)(a). Respondent replies that OAR 291-100-0080(3)(g) accurately reflects the legislative intent set forth in ORS 137.370(2)(a), because that statute provides for credit for time served when the inmate is *"confined"* (emphasis added)—and arrestees who are placed on conditional release or home detention pending trial are not "confined," as that term is used in ORS 137.370(2)(a).

Thus, the success of petitioner's rule challenge depends on the meaning of "confined," as used in ORS 137.370(2)(a). In construing the words of a statute, our goal is to discern the intent of the legislature. To do so, we examine both the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The verb "confine," as used in this context, can mean:

> "[T]o hold within bounds : restrain from exceeding boundaries : **a** : to keep in narrow quarters : imprison **b** : to prevent free outward passage or motion of : SECURE, ENCLOSE, FASTEN ‹the loose cloud of hair was *confined* in two plaits— W.H. Hudson› ‹dikes *confined* the flood waters› **c** : to keep from leaving accustomed quarters (as one's room or bed) under pressure of infirmity, childbirth, detention, business reasons ‹now that he was able to employ an assistant he was not closely *confined* to the store—Ellen Glasgow› * * * **e** : to keep to a certain place or to a limited area : prevent unlimited incidence of ‹in *confining* the disease to Memphis—W.F. Willcox› ‹the buffalo was not *confined* to the open grassland—C.D. Forde›."

*Webster's Third New Int'l Dictionary* 476 (unabridged ed 2002).

Respondent asserts that "confined" in ORS 137.370(2)(a) is used in the narrower sense, *viz.*, "imprisoned." Conversely, petitioner opts for a less restrictive (so to speak) definition, arguing that a person need not be imprisoned to be confined. We understand petitioner to be asserting something along the lines of the usage stated in the third example in the dictionary definition—"to keep from leaving accustomed quarters * * * under pressure of * * * business reasons." That is, petitioner suggests that a person who

agrees to limit his or her location may, under a broad reading of the definition, be "confined," albeit self-confined. Petitioner also argues that Oregon courts have "consistently held that when incarcerated persons are lawfully outside of their correctional facilities, they are still 'confined' there for purposes of the escape statutes," *citing State v. Gilmore*, 236 Or 349, 388 P2d 451 (1964), *State v. Dillenburg*, 49 Or App 911, 621 P2d 1193 (1980), and *Kneefe v. Sullivan*, 2 Or App 152, 465 P2d 741 (1970).

As explained below, we conclude, primarily based on the statutes that provide context for ORS 137.370(2)(a), that respondent is correct that "confined," as used in that statute, equates with "imprisoned" and does not encompass a situation in which a person voluntarily agrees to restrict his or her location. Moreover, the cases on which petitioner relies do not support his contention. In fact, we have held that a person who is on "home detention" pretrial release *cannot*, in fact, be convicted of escape for failing to comply with the conditions of the release. *State v. Wilde*, 123 Or App 493, 862 P2d 105 (1993).

We begin with the statutory context for the "confined by any authority" provision of ORS 137.370(2)(a). ORS 137.370(1) indicates that, as a general matter, when a person is sentenced to imprisonment in DOC's custody, the "term of confinement" begins when DOC takes custody. ORS 137.370(2) instructs DOC on how to compute the "term of confinement." Paragraph (2)(b) includes within the "term of confinement" time that a person is authorized by DOC "to spend outside a confinement facility, in a program conducted by or for" DOC. Thus, paragraph (2)(b) pertains to calculation of the "term of confinement" while a person is in DOC's custody.

Paragraph (2)(a), by contrast, applies more broadly to time that the person is confined "by any authority" after the arrest for the crime for which the sentence is imposed. Because paragraph (2)(a) clearly contemplates DOC calculating a "term of confinement" to include time that a person is "confined" before being delivered to DOC's custody for service of the sentence, we turn to ORS 137.320, which concerns the

delivery of convicted defendants to the custody of DOC for service of their sentences.

ORS 137.320 provides vital contextual clues to the statutory construction issue presented. Accordingly, we quote it at length:

"(1)   When a judgment includes commitment to the legal and physical custody of the Department of Corrections, the sheriff shall deliver the defendant, together with a copy of the entry of judgment and a statement signed by the sheriff of the *number of days the defendant was imprisoned* prior to delivery, to the superintendent of the Department of Corrections institution to which the defendant is initially assigned pursuant to ORS 137.124. If at the time of entry of a judgment, the defendant was serving a term of incarceration at the direction of the supervisory authority of a county upon conviction of a prior felony, the sheriff shall also deliver to the Department of Corrections a copy of the prior entry of judgment committing the defendant to the supervisory authority of the county of conviction and a statement of the number of days the defendant has remaining to be served on the term or incarceration imposed in the prior judgment.

"(2)   If the defendant is surrendered to another legal authority prior to delivery to an institution of the Department of Corrections, the sheriff shall forward to the Department of Corrections copies of the entry of all pertinent judgments, a statement of the *number of days the defendant was imprisoned* prior to surrender, a statement of the number of days the defendant has remaining to be served on any term of incarceration the defendant was serving at the direction of the supervisory authority of a county upon conviction of a prior felony and an identification of the authority to whom the prisoner was surrendered.

"(3)   *Upon receipt of the information described in subsection (1) or (2) of this section, the Department of Corrections shall establish a case file and compute the defendant's sentence in accordance with the provisions of ORS 137.370.*"

(Emphasis added.) Thus, ORS 137.320(1) and (2) expressly direct sheriffs to report to DOC the number of days a person has been "imprisoned" prior to delivery to DOC's custody. Subsection (3) instructs DOC, upon receipt of that information, to compute the defendant's sentence in accordance with

ORS 137.370. Those two statutes, in conjunction, indicate that DOC is to use information provided by the sheriff about "the number of days the defendant was *imprisoned*," ORS 137.320(1), (2) (emphasis added), to establish the "term of *confinement*," ORS 137.370(2) (emphasis added).

Significantly for our purposes, there is no parallel statutory requirement or mechanism, analogous to ORS 137.320, with respect to time spent on pretrial conditional release, such as home detention. That is, although ORS 137.320 makes specific provisions for DOC to acquire information about pretrial "imprisonment" from the county sheriff in order to make the required calculation of the term of imprisonment pursuant to ORS 137.370, there is no analogous provision by which DOC is to be informed of time spent on pretrial conditional release, much less to credit such time in the calculation made by DOC pursuant to ORS 137.370. The absence of such a provision is telling.

We also examine, as context, the statutes related to pretrial conditional release. "Conditional release" is defined as "a nonsecurity release which imposes regulations on the activities and associations of the defendant." ORS 135.230(2). "Release," as pertinent here, is "temporary or partial freedom of a defendant from lawful custody before judgment of conviction[.]" ORS 135.230(8). *See also* ORS 135.255 (defendant shall not be released "from custody" until release agreement is properly filed). "Conditional release" specifically may include "[r]easonable regulations on the activities, movements, associations and residences of the defendant, including, if the court finds it appropriate, restriction of the defendant to the defendant's own residence or to the premises thereof." ORS 135.260. Thus, a person who is on conditional release is not in custody, although that person may be subject to reasonable regulations on activities.

Petitioner observes, nevertheless, that persons outside of correctional facilities can be prosecuted for escape crimes. Consequently, petitioner reasons, persons outside of correctional facilities on conditional release should be deemed to be "confined" for purposes of ORS 137.370(2)(a). We disagree.

At the outset, petitioner's "escape" argument is inapt because the escape statutes do not use the term "confined." Rather, the crime of "escape" involves "unlawful departure of a person from *custody* or a correctional facility." ORS 162.135(5) (emphasis added). Further, and significantly, "escape" expressly "does *not* include failure to comply with provisions of a conditional release" agreement. ORS 162.135(5) (emphasis added). Thus, although petitioner is correct that persons outside of correctional facilities can, in some circumstances, be prosecuted for escape crimes, he is incorrect that persons on pretrial conditional release pursuant to ORS 135.230 to 135.290 can be successfully prosecuted for escape crimes by failing to abide by the conditions of their releases. *See Wilde*, 123 Or App at 496.[1] Petitioner's contextual resort to the law of escape is unavailing.

In sum, our examination of the statutory text in context demonstrates that "confined" in ORS 137.370(2)(a) means incarcerated and does not encompass pretrial conditional release, including home detention. Given that construction, OAR 291-100-0080(3)(g) does not deviate from or exceed DOC's authority under ORS 137.370 and ORS 137.320.

OAR 291-100-0080(3)(g) held valid.

---

[1] Indeed, in *Wilde*, we specifically noted that several of the older cases that petitioner invokes here, *e.g.*, *State v. Torgerson*, 98 Or App 248, 778 P2d 991 (1989), and *State v. Ratliff*, 89 Or App 483, 749 P2d 616 (1988), are no longer good law in light of the 1989 amendment to ORS 162.135(5), which added the qualification that failure to comply with the provisions of a conditional release agreement do not constitute escape.

The remaining cases that petitioner cites also are distinguishable. *Gilmore*, *Dillenburg*, and *Kneefe* concerned situations in which an inmate serving a sentence for a crime departed without authorization from work sites. *Gilmore*, 236 Or at 352-55; *Dillenburg*, 49 Or App at 913; *Kneefe*, 2 Or App at 153. They provide no insight into the legislature's use of the term "confined" in ORS 137.370, as they do not concern that statute or any contextually related statute, and they do not construe the term "confined."