STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY DEAN GRUVER,
*Defendant-Appellant.*

Lincoln County Circuit Court
100255; A146586

310 P3d 728

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger,

Attorney General, Anna M. Joyce, Solicitor General, and Jamie K. Contreras, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Lincoln County Jail authorities authorized defendant, an inmate, to spend a day working at the Lincoln County Animal Shelter. Some time after arrival at that facility, he walked away. Later apprehended, he was charged with, and convicted of, escape in the second degree (escape from a "correctional facility") and escape in the third degree (escape from "custody"). On appeal, he argues that neither of those violations occurred; rather, he argues, he failed to return from a "form of temporary release," a less serious crime. He also argues that the court erred in denying his motion for judgment of acquittal on the charge of escape in the third degree. The state maintains that the conviction for second-degree escape was proper, but concedes that the court should have granted defendant's motion for judgment of acquittal on the charge of escape in the third degree; however, according to the state, the latter error was harmless because the judgment merged the third-degree escape conviction into the second-degree conviction. We reverse and remand.

The facts are undisputed. Defendant was serving a sentence in the Lincoln County Jail. As is apparently customary, he was assigned to work at the local animal shelter cleaning kennels and feeding animals. A police officer took defendant and two other inmates to the shelter and then departed, leaving the inmates under the supervision of Stowell, an unarmed civilian employed by the Lincoln County Sheriff's Department as the animal shelter manager. One of Stowell's duties was to periodically check on inmates working there. At around 10:00 a.m., Stowell noticed that defendant was missing. After looking around the shelter for him, Stowell telephoned the jail and reported that defendant was not on the premises. Defendant was subsequently apprehended and charged with escape in the second degree and escape in the third degree. He waived his right to a jury trial and was found guilty of both counts. The court merged the third-degree escape conviction into the second-degree escape conviction and sentenced defendant to 10 months' incarceration and two years of post-prison supervision, plus fines and fees totaling $1,178.

Defendant's appeal revolves around the escape statutes and cases construing them. ORS 162.155(1) defines escape in the second degree, as relevant to this case, as follows: "A person commits the crime of escape in the second degree if * * * [t]he person escapes from a correctional facility[.]" A "correctional facility," in turn, is defined in ORS 162.135(2), again as relevant to this case, as "any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order[.]" Further, "an inmate is considered confined within a 'correctional facility' from time of original commitment until lawfully discharged, regardless of his actual presence within the institution." *State v. Dillenburg*, 49 Or App 911, 916, 621 P2d 1193 (1980) (internal quotation marks omitted). Escape in the second degree is a Class C felony. ORS 162.155(2). "Unauthorized departure," a Class A misdemeanor, ORS 162.175, is "the failure to return to custody after any form of temporary release * * * from a correctional facility," ORS 162.135(8). "Temporary release" is not defined by statute or rule.

Defendant does not dispute that the Lincoln County Jail is a "correctional facility" or that he left the animal shelter without permission. He argues, rather, that leaving the shelter was not an "escape" because, when he left, he was not actually or constructively in a "correctional facility"; rather, he argues, he was on "temporary release" from such a facility and therefore guilty only of unauthorized departure, ORS 162.175. In support of that argument, he relies primarily on *State v. Manley*, 326 Or 204, 951 P2d 686 (1997). In that case, the defendant was in the Benton County Jail for a probation violation; his sentence allowed authorities to let him attend an alcohol treatment center in Ontario, Oregon, while serving his time. *Id.* at 207. Before leaving for Ontario, the defendant was told that failure to return to the jail after completing the program would amount to second-degree escape. *Id.* Upon discharge, he failed to return; he was later arrested after a traffic stop, and then tried and convicted of second-degree escape. *Id.* at 207-08. After this court affirmed without opinion, the Supreme Court took up the case to address "whether defendant's failure to return to a county correctional facility as ordered, upon completion of an alcohol treatment program located elsewhere, constitutes

the felony offense of escape in the second degree or the misdemeanor offense of unlawful departure." *Id.* at 206. Unable to answer that question on the basis of the offenses' statutory text, the court turned to contextual statutes and reasoned as follows:

"Other statutes, contextually, help to answer that question, however. ORS 144.410 to 144.525 provide for a 'work release' program. ORS 144.420(1)(d) (1995) provided:

"'The Department of Corrections shall establish and administer a work *release* program in which a misdemeanant or felon may participate, and *if confined, be authorized to leave assigned quarters for the purpose of*:

"'* * * * *

"'(d) *Participating in alcohol* or drug *treatment programs.*' (Emphasis added.)

"Although [Benton County Corrections Facility] is not a Department of Corrections (DOC) institution that is governed by ORS 144.420(1), that statute suggests nonetheless that the legislature considers participation in an off-premises alcohol treatment program to be a form of 'release' and that 'release' occurs when, for a particular purpose, an inmate is 'authorized to leave assigned quarters' at the place where the inmate otherwise is confined. * * *

"As noted above, in general a person commits the crime of unauthorized departure if the person 'fail[s] to return to custody after any form of temporary release.' ORS 162.175; 162.135(8). The legislature has specified, however, that one particular form of unauthorized absence—a DOC inmate's unauthorized absence from a 'work release' program—'[c]onstitutes an escape from a correctional facility under ORS 162.155.' ORS 144.500(2).

"ORS 144.500(2) illustrates two points. First, the legislature saw a need to specify that an unauthorized absence from a 'work release' program while a DOC inmate was an *escape*, a need that would not exist if that conduct *already were covered* by the usual definition of 'escape.' Second, although the legislature has specified that an unauthorized absence from a 'work release' program is an escape *for DOC inmates*, it has not so provided for persons confined in local correctional facilities. We should give effect to the legislature's distinction between the two groups."

*Manley*, 326 Or at 209-10 (emphases and brackets in original; footnotes omitted).

The court also called attention to *State v. Galligan*, 312 Or 35, 41, 816 P2d 601 (1991), in which the court had cited legislative history to demonstrate that what is now the unauthorized departure statute was introduced to create a distinction between "'walkaways and escapes * * *. * * * The walkaway situation would then be added to the definition of unauthorized departure.'" *Manley*, 326 Or at 211 (quoting *Galligan*, 312 at 40).

According to defendant, *Manley* is directly on point. The factual situations are identical in all relevant respects: A defendant, confined to a county jail, is authorized temporarily to leave the confines of the jail to participate in a program unsupervised by law enforcement officials. Defendant argues that we should—indeed, we must—follow the reasoning of the Supreme Court in *Manley*, in particular the inferences drawn from the work release statutes and the legislative history.

We agree. The state's contrary arguments are not persuasive. It attempts to distinguish *Manley* by citing two subsequent cases in which this court and the Supreme Court have held that particular unauthorized departures from, or failures to return to, a correctional facility constituted an escape and not an unauthorized departure. In *State v. Croghan*, 162 Or App 251, 986 P2d 579 (1999), the defendant was allowed to go to a nearby county law library, where he was under the watch of a guard. He then left without permission and did not return to the jail. We held that, because he was "under guard" while at the library, he was "constructive[ly] confined" within the correctional facility; we consequently upheld his conviction for second-degree escape. *Id.* at 253, 255. More recently, in *State v. Lane*, 341 Or 433, 144 P3d 927 (2006), the defendant was present in a courtroom for a hearing on the revocation of his release agreement. The judge allowed the state's motion to revoke the agreement, "signed the order in defendant's presence, told defendant that he had revoked defendant's release, and informed him that he had been 'reduced to custody.'" *Id* at 435-36. In rejecting the defendant's argument that he should have been

convicted of unauthorized release instead of second-degree escape, the court reasoned that, once the judge had revoked the defendant's release, the defendant was once again in custody; the judge's order "plainly 'confined' defendant to the courtroom," and that one definition of "correctional facility" was "'any place used for the confinement of persons * * * confined under a court order.'" *Id.* at 439-40 (quoting ORS 162.135(2)). The court added:

> "[W]e note an additional fact that removes the issue from doubt: the presence of the deputy sheriff who had brought the [defendant's] codefendants to court. Those two codefendants clearly remained in constructive custody, and the sheriff was the symbol of that status. Judge Thompson's order placed defendant directly under the authority of the deputy sheriff * * *. And that position was, as we have noted, constructive custody in a correctional facility[.]"

*Id.* at 440.

Thus, both *Croghan* and *Lane* depend in large part on the fact that the inmates in those cases absconded while under the direct supervision of a law enforcement official, and that supervision played a crucial role in determining that the defendant was in constructive custody in a correctional facility. In short, we find nothing to persuade us that this case is not controlled by *Manley*. Defendant was not guilty of escape in the second degree, but only of unauthorized departure.

In a second assignment of error, defendant argues, and the state concedes, that the court erred in not granting defendant's motion for a judgment of acquittal on the charge of third-degree escape. The state, however, argues that the error was harmless because the conviction for third-degree escape was merged with the conviction for second-degree escape, resulting in a single judgment of conviction. Our resolution of defendant's first assignment renders the state's "harmless error" argument erroneous, because there should have been no conviction for escape in the second degree into which the conviction for escape in the third degree could merge. Accepting the state's concession, we conclude that defendant should have been convicted of only one offense: unauthorized departure, ORS 162.175.

Reversed and remanded for entry of judgment of conviction for unauthorized departure under ORS 162.175 and for resentencing.