Argued and submitted July 28, 2005, conviction for first-degree failure to appear reversed; remanded for resentencing; otherwise affirmed August 23, 2006

STATE OF OREGON,
*Respondent,*

*v.*

ANTHONY LOUIS FORD,
*Appellant.*

CF020307; A118645

142 P3d 107

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

ORTEGA, J.

* Schuman, J., *vice* Richardson, S. J.

## ORTEGA, J.

■      Defendant appeals his conviction for failure to appear in the first degree, ORS 162.205, assigning error to the trial court's denial of his motion for a judgment of acquittal on that charge.[1] In particular, he contends that the state failed to prove that the release agreement on which the state based the charge released him "from custody," as required by the statute. ORS 162.205(1)(a). In determining whether a trial court correctly denied a criminal defendant's motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found the essential elements of the offense. *State v. Metcalfe*, 172 Or App 501, 503, 19 P3d 374 (2001). We agree with defendant and, therefore, reverse.

The following facts are undisputed. Defendant was initially charged with first-degree burglary, a felony, and first-degree attempted theft, a misdemeanor. After being sent a letter instructing him to appear for the charges, defendant voluntarily came to court for his arraignment.[2] At the hearing, defendant signed a release agreement agreeing to "appear for trial and all required court appearances." The agreement, which was signed by the court, also stated that "good cause has been shown to release [d]efendant *from custody* on [d]efendant's own recognizance." (Emphasis added.)

Defendant failed to appear for one of his subsequent court hearings, despite having been informed of it. Consequently, defendant was charged with, and convicted of, first-degree failure to appear, based on the felony burglary charge, and second-degree failure to appear, based on the misdemeanor attempted theft charge. ORS 162.205(1)(a); ORS 162.195(1)(a).

---

[1] In his supplemental brief, defendant raises a challenge to his sentence on that conviction, as well. We need not reach that argument in light of our conclusion that he was entitled to acquittal.

[2] The trial judge commented that the standard procedure was to send such a letter and to issue a warrant only in the event that the defendant does not appear as instructed.

■　　　Defendant assigns error to the trial court's denial of his motion for a judgment of acquittal for failure to appear in the first degree, contending that the release agreement on which the state based the charge did not release him "from custody," as required by ORS 162.205.[3] That statute provides, in part:

"(1)　A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:

"(a)　Having by court order been *released from custody* or a correctional facility *under a release agreement * * ** upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony * * *."

(Emphasis added.) ORS 162.135(4) defines "custody"— "unless the context requires otherwise"—as *"the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order,* but does not include detention in a correctional facility * * *." (Emphasis added.) Defendant maintains that, contrary to that statutory definition, he was not subject to "actual or constructive restraint by a peace officer pursuant to an arrest or court order" at the time of his arraignment, when he entered into the release agreement. He appeared at the arraignment voluntarily, in response to a letter instructing him to appear. And although he acknowledges that the court could have taken him into custody at the time, he contends that he was not actually or constructively restrained when he signed the agreement.

The state argues that defendant was in custody at the time he signed the release agreement because he was subject to "constructive restraint *by a court*." (Emphasis in original.) Given that the statutory definition of "custody" applies only "unless the context requires otherwise," ORS 162.135, the state contends that the context requires a more expansive definition of custody in order to fulfill the statute's purpose, which is to "punish persons who * * * fail to appear

---

[3] Defendant does not assign error to his misdemeanor-based conviction for failure to appear in the second degree, which was based on a different release agreement that undisputedly released him "from a correctional facility." ORS 162.195(1)(a).

* * * after having been released on bail or on their own recognizance." Commentary to Criminal Law Revision Commission Proposed Criminal Code, Final Draft and Report § 196, 197 (July 1970). Accordingly, the state urges us to interpret the statute by reference to the plain meaning of custody, which it contends includes "constructive judicial safekeeping or control."

Because the resolution of this case centers on the meaning of "custody" in ORS 162.135(4), we apply the familiar analytical methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), to determine the legislature's intent, beginning with the statute's text and context. We stop at that first level of analysis if the legislative intent is unambiguous. *Id.* at 611.

The relevant text of the statutory definition lists two elements that must be satisfied in order for a defendant to be considered in "custody": he must be (1) actually or constructively restrained by a peace officer, (2) pursuant to an arrest or court order. Here, because nothing in the record indicates that defendant was restrained by a peace officer or that any restraint was pursuant to either an arrest or a court order, the trial court erred when it denied defendant's motion for a judgment of acquittal.

First, the state failed to establish that defendant was restrained by a *peace officer*. A peace officer, for these purposes, is defined as "a sheriff, constable, marshal, municipal police officer, member of the Oregon State Police, investigator of the Criminal Justice Division of the Department of Justice or investigator of a district attorney's office and such other persons as may be designated by law." ORS 161.015(4).[4] Here, although it is possible that such a person might have been sitting in the courtroom or stationed somewhere nearby, the record does not indicate that anyone fitting that statutory description was present during the signing of the release agreement. Without a record that a peace officer was present, the state cannot establish that defendant was restrained, either actually or constructively.

---

[4] The definitions in ORS 161.015 apply to "chapter 743, Oregon Laws 1971." ORS 162.135(4), which contains the applicable definition of "custody," was originally passed as Oregon Laws 1971, chapter 743, section 189.

Second, the statute requires that the restraint imposed by the peace officer must be "pursuant to an arrest or court order." Here, defendant was neither arrested nor did the court order him taken into custody. As noted, the procedure at the court was to first send a letter to a defendant without a warrant, and to issue a warrant for his arrest only in the event that he does not appear in response to the letter. Here, defendant appeared voluntarily before a warrant was issued. Furthermore, there is no evidence that he was "booked" or otherwise taken into custody at the initial hearing before his release.

The state points out that the statutory definition of "custody" applies "unless the context requires otherwise," and contends that, here, the context requires otherwise. The state suggests that *State v. Galligan*, 312 Or 35, 39, 816 P2d 601 (1991)—which identifies a "context" that "requires" a definition of custody other than the one provided by the statute—supports that proposition.

The issue in *Galligan* was whether an inmate at a correctional facility who was given authorization to leave but failed to return could be charged with unauthorized departure under ORS 162.175. 312 Or at 37. "Unauthorized departure" is defined, in part, as "failure to return to *custody* after * * * temporary release * * * *from a correctional facility*." ORS 162.135(8) (emphasis added). The statutory definition of custody, however, explicitly "does not include detention in a correctional facility[.]"[5] ORS 162.135(4). Noting the apparent conflict between the two subsections, the Supreme Court examined the legislative history and acknowledged that "a statute should not be construed so as to ascribe to the legislature the intent to produce an unreasonable or absurd result." 312 Or at 39-41 (internal quotation marks omitted). It ultimately held that, in order to give full effect to the two subsections, the "context * * * requires" that "custody" in ORS 162.135(8) meant something different from "custody" defined in ORS 162.135(4). 312 Or at 39, 41.

Here, there is no such conflict or ambiguity in the definition of "custody" provided in ORS 162.135(4) as applied

---

[5] At the time *Galligan* was decided, ORS 162.135(8) and (4) were numbered ORS 162.135(7) and (3), respectively, and were changed by Oregon Laws 1991, chapter 809, section 1. We refer to the current version of the statute.

to the failure to appear statute. Moreover, applying the definition of "custody" in ORS 162.135(4) to the failure to appear statute does not "ascribe to the legislature the intent to produce an unreasonable or absurd result." Therefore, this context does not otherwise require an alternative definition of custody.

Conviction for first-degree failure to appear reversed; remanded for resentencing; otherwise affirmed.