Submitted May 30, 2012, affirmed April 17, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT HENRY MATHER, JR.,
*Defendant-Appellant.*

Lane County Circuit Court
200920884; A144793

300 P3d 225

Peter Gartlan, Chief Defender, and David C. Degner, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Jennifer S. Lloyd, Attorney-in-Charge, Criminal Appeals, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Brewer, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Following a jury trial, defendant was convicted of two counts of failure to appear in the first degree, ORS 162.205.[1] On appeal, defendant asserts that the trial court erred in denying his motion for judgment of acquittal on both counts of first-degree failure to appear because there was insufficient evidence that he had been released from "custody or a correctional facility" within the meaning of ORS 162.205. We conclude that the evidence was sufficient to establish that defendant was released from a "correctional facility" for purposes of ORS 162.205 and, accordingly, affirm.

In reviewing the denial of a motion for judgment of acquittal, we determine whether, after viewing the facts in the light most favorable to the state, the record contains evidence from which a rational trier of fact could have found that the essential elements of the charged offenses were proved beyond a reasonable doubt. *State v. Glazier*, 253 Or App 109, 111, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013). The facts are as follows. Defendant was cited to make an initial appearance in court on July 16, 2009, for unlawful possession of a Schedule I controlled substance. After defendant failed to make that appearance, the court issued a warrant for defendant's arrest. On July 20, 2009, defendant appeared in court as a result of the bench warrant, and the court told defendant that he could choose to be "taken into custody by the sheriff's deputies" or to be placed in "constructive custody" and ordered to "[walk] over to pretrial services" at the Lane County Jail. Defendant chose to be placed in constructive custody. He then walked over to pretrial services and executed a release agreement with a pretrial services release officer. The agreement required, among other things, that defendant appear in court on July 23,

---

[1] ORS 162.205 provides, in part:

"(1) A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:

"(a) Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony[.]

"* * * * *

"(2) Failure to appear in the first degree is a Class C felony."

2009. Defendant appeared in court on that date, and he was ordered to return to court for a "35[-day call]" on August 13, 2009. That appearance was reset for August 24, 2009, which defendant acknowledged by signing a "notice to return to court." Defendant failed to appear in court that day, and the court subsequently issued a bench warrant for his arrest.

On September 2, 2009, defendant appeared in court, and he again was placed in constructive custody and ordered to walk over to pretrial services, where he executed a new release agreement. That release agreement required, among other things, that defendant appear in court on September 9, 2009. Once again, defendant failed to appear on that date, and the court again issued a bench warrant for his arrest. The following week, defendant was arrested and charged with two counts of first-degree failure to appear.

At trial, the state presented evidence that, on two separate occasions, defendant failed to appear in court after he was released from pretrial services under a release agreement. A release officer, Clarence Woods, testified extensively regarding the role of pretrial services once a person is directed to its office. Woods explained:

> "Release officers interview all defendants lodged at the Lane County Jail to determine their eligibility for release, whether or not they qualify for [a] court-appointed attorney. Once we determine whether or not they're qualified for release, we determine * * * what conditions they should be released under."

Woods further explained that that authority "is given to [release officers] by the circuit court judges, particularly the presiding judge." Woods explained that, when a person appears for arraignment on a warrant, the judge has "authority to take that person into custody" and "remand that person to jail." Often, however, the court places a person in "constructive custody." Woods stated:

> "Constructive custody is that they are given permission by the judge to take themselves over to pretrial services, which is located at the Lane County Jail at 101 West 5th, which is approximately four blocks away from here. They walk over to our office, check in with us.

"We interview them just as we would anybody else who was in custody to determine under what conditions that they should be allowed to walk away from the jail or whether or not they should be taken into full physical custody and brought into the jail."

After the state presented its case, defendant moved for a judgment of acquittal on both counts of first-degree failure to appear, arguing that the state failed to present any evidence that defendant was released from custody by a peace officer, as contemplated by the statute. Rather, defendant argued, the state only established that defendant was in the custody of the court. Defendant relied on our decision in *State v. Ford*, 207 Or App 407, 142 P3d 107 (2006), where we rejected the state's argument that "custody," within the meaning of the failure-to-appear statute, includes actual or constructive restraint by a court. He argued that both release agreements were entered into after he was taken into constructive custody by the *court*, as opposed to a peace officer and, thus, the circumstances here did not fall under the failure-to-appear statute.

Additionally, defendant argued, the state failed to present any evidence that he was released from a "correctional facility." In defendant's view, although pretrial services is located at a correctional facility, that fact is "not sufficient to qualify [defendant] as having been released by court order from a correctional facility since he was never in a true correctional facility."

The court denied defendant's motion for judgment of acquittal on both counts. The court acknowledged that "the [failure-to-appear] statute seems to suggest [defendant] has to be taken into custody by a peace officer and that seems to be what the *Ford* case says." However, in view of the statutory language providing that the release could also be from a "correctional facility," the court concluded that "there is evidence from which the jury could determine that the pretrial release [services] was part of the correctional facility."

On appeal, defendant reiterates his arguments from below that the state failed to show that defendant was released from "custody or a correctional facility," as required

by ORS 162.205, when he executed the release agreements. According to defendant, the state did not establish that, at any time relevant to his release, he was placed in custody by a peace officer. Similarly, defendant argues, although pretrial services is located at the Lane County Jail, a correctional facility, the state did not present any evidence that defendant was in actual or constructive custody of the jail and, thus, the state failed to show that defendant was released from a correctional facility when he signed a release agreement at pretrial services.

The state counters that the trial court correctly denied defendant's motion for judgment of acquittal because the state's evidence—specifically, the extensive testimony regarding the pretrial services release process—allowed a rational trier of fact to find that defendant, by court order, had been placed in constructive custody of a peace officer at the jail before he signed the release agreement. Alternatively, the state asserts, there was sufficient evidence in the record indicating that the court placed defendant in constructive custody of a correctional facility *before* defendant was directed to walk over to pretrial services.

We agree with the state that the trial court correctly denied defendant's motion for judgment of acquittal, although for different reasons. We conclude that there was sufficient evidence that defendant, when he was released from *pretrial services* under a release agreement, was released from a "correctional facility" within the meaning of the first-degree failure-to-appear statute, ORS 162.205.

As noted, ORS 162.205(1)(a) provides:

"A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:

"(a) Having by court order been released from *custody or a correctional facility* under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony[.]"

(Emphasis added.)

Here, as he did below, defendant relies on our decision in *Ford* to support his position. That case, however, is factually quite different and concerned only whether the defendant was released "from custody" within the meaning of the statute. Here, by contrast, there is evidence that defendant was released from a "correctional facility."

For these purposes, "correctional facility" is defined as *"any place used for the confinement of persons* charged with or convicted of a crime or otherwise confined under a court order * * *." ORS 162.135(2) (emphasis added). Thus, the statute provides a more expansive definition of a "correctional facility" that, under certain circumstances, encompasses facilities beyond the common conceptions of that term. It includes, for example, a jail, but also, as in this case, *any* place used for the confinement of persons pursuant to a court order.

Here, the evidence established that defendant was confined at pretrial services under a court order prior to his release and was therefore released from a "correctional facility" under the statute. Rather than having a deputy sheriff take defendant into custody and transport him to the Lane County Jail, the court ordered defendant to walk over to pretrial services located at the jail. Defendant had no lawful choice but to go there. At pretrial services, a release officer determined that defendant was eligible for release. Defendant signed a release agreement, and he was then allowed to walk away from pretrial services. As Woods testified, a defendant may be released from pretrial services after a release officer "determines the conditions" of the release agreement, and the defendant agrees to those terms. If a person is "taken into full physical custody and brought into the jail," he does not qualify for release. As Woods's testimony provides, in both cases, and at all relevant times, a defendant is within the control of pretrial services until a determination is made as to whether that defendant will be released or taken into the jail. Thus, for purposes of ORS 162.135(2), defendant was within the control of pretrial services under a court order. It follows that the pretrial services office was a "correctional facility" for purposes of the statute defining first-degree failure to appear, ORS 162.205. Accordingly, there is sufficient evidence that defendant was

released from a "correctional facility" when he was released from pretrial services under a release agreement.

Affirmed.